**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

CAMILLE M. WRIGHT,                )     CASE NO. 1:18-cv-1724
                                  )
        Plaintiff,                )     JUDGE PAMELA A. BARKER
                                  )
        v.                        )     MAGISTRATE JUDGE DAVID A. RUIZ
                                  )
NANCY A. BERRYHILL,               )
        *Acting Comm'r of Soc. Sec.*,   )     **REPORT AND RECOMMENDATION**
                                  )
        Defendant.                )

Plaintiff, Camille M. Wright (hereinafter "Plaintiff"), challenges the final decision of

Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter

"Commissioner"), denying her applications for a Period of Disability ("POD"), Disability

Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI

of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has

jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States

Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and

Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the

Commissioner's final decision be AFFIRMED.

## I. Procedural History

On July 28, 2015 and July 30, 2015, Plaintiff filed her applications for POD, DIB, and SSI, alleging a disability onset date of July 7, 2015.[1] (Transcript ("Tr.") 265-271, 276-284). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 175-210). Plaintiff participated in the hearing on July 21, 2017, was represented by counsel, and testified. (Tr. 40-79). A vocational expert ("VE") also participated and testified. *Id*. On November 15, 2017, the ALJ found Plaintiff not disabled. (Tr. 12-30). On May 29, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). On July 25, 2018, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 10 & 14).

Plaintiff asserts the following assignments of error: (1) whether the ALJ improperly ignored evidence that Plaintiff requires the use of a cane; and (2) whether the opinions of Plaintiff's treating physician were afforded appropriate weight. (R. 10, PageID# 715).

## II. Evidence

### A. Relevant Medical Evidence[2]

#### 1.  Treatment Records

On July 7, 2015, Plaintiff was seen by Bhupendra Patel, M.D., for a complaint of pain in the right ankle after a slip and fall. (Tr. 382-384). His impression was a "comminuted displaced

---

[1]  Plaintiff also filed an application for Widows' Insurance benefits on September 25, 2015. (Tr. 272-275).
[2]   The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

fracture involving supramalleolar aspect distal fibula," "[c]omplete fracture of medial malleolus displaced medially," and "anterior and medial displacement of distal tibia in relation to talar dome." (Tr. 384).

On July 21, 2015, Plaintiff underwent surgery involving an "[o]pen reduction, internal fixation bimalleolar fracture, right lower extremity," and "[r]epair of deltoid ligament" performed by Audley M. Mackel, M.D. (Tr. 416).

On August 3, 2015, Plaintiff complained of 3 out of 10 pain at a follow-up examination. (Tr. 435). She was given a fiberglass cast, and Plaintiff was to continue physical therapy. (Tr. 436).

On December 7, 2015, physical therapist Josepha Schenkelberg stated that Plaintiff entered the clinic ambulating with a standard, non-adjustable wooden cane that was too short for her, which used to be her grandmother's. (Tr. 491). On objective examinations, Ms. Schenkelberg noted deviations in Plaintiff's gait and that her functional strength allowed Plaintiff to "walk no farther than 1 city block." (Tr. 491).

On December 17, 2015, at a follow-up with Dr. Mackel, Plaintiff's "weight bearing status is now non weight bearing and weight bearing as tolerated." (Tr. 482). Plaintiff's gait was noted as "mildly antalgic, limping on the right side, and outtoeing, ambulating with assistance, ambulating without assistance." (Tr. 483). Plaintiff was prescribed Tylenol-Codeine and Naprosyn, and Dr. Mackel's plan included "Cane for ambulation." *Id.*

On December 18, 2015, Plaintiff began mental health treatment with psychiatrist Jaina Amin, M.D. (Tr. 637-641). On mental status examination, Plaintiff had a depressed and anxious mood, a depressed and tearful affect, organized and logical thought process, passive suicidal ideation with no plan or intent, had no hallucinations, was oriented x 3, had no deficits in

3

memory or attention/concentration, fair insight, and impaired judgment. (Tr. 640). Dr. Amin's

impression was severe depression and PTSD. (Tr. 640-641). She prescribed a higher dosage of

Effexor, and started Plaintiff on Prazosin. (Tr. 641).

On January 22, 2016, notes from a telephone encounter with physical therapist

Schenkelberg reveal the following:

> Patient called PT on l /21 /2016 to inquire about her script for a standard **cane**. PT
> … [c]alled patient's daughter who is listed as emergency contact. Gave daughter
> the message that the script for the **cane** is here and PT was going to issue on
> 1/28/2015 or 1/13/2016 when patient had appointments, but she no showed both
> appointments. Told daughter that if her mom wants the **cane** to make an
> appointment with us and then it will be issued to her.

(Tr. 499) (emphasis in original).

On February 5, 2016, Plaintiff told physical therapist Schenkelberg she had been non-

compliant with her appointments due to transportation hardships, and because she cares for both

of her elderly parents. (Tr. 496). Plaintiff stated she was improved with walking, stair negotiation

and her home exercise program. *Id*. She used a cane during gait training. (Tr. 497-498).

On February 12, 2016, Plaintiff was seen by Dr. Amin. (Tr. 629-632). Plaintiff's

presentation on mental status examination remained largely unchanged since her December of

2015 examination, except that her judgment improved to fair. (Tr. 631). Plaintiff was prescribed

Clonazepam for anxiety. *Id*.

On April 6, 2016, physical therapist Schenkelberg noted Plaintiff was seen three times over

a two-month period for gait training, neuromuscular re-education, and therapeutic exercise. (Tr.

560). The treatment plan called for two visits per week for six weeks. *Id*. She was unable to

assess Plaintiff's status with respect to goals, and noted Plaintiff was discharged because she had

not returned to therapy or scheduled follow-up appointments. *Id*.

On May 27, 2016, Plaintiff was seen by Dr. Amin. (Tr. 625-628). Plaintiff reported that her medications were helping a little with anxiety. (Tr. 625). Plaintiff's presentation on mental status examination remained largely unchanged since February of 2015. (Tr. 627). Plaintiff was restarted on Venlafaxine, and started on Klonopin. (Tr. 627-628).

On July 21, 2016, Plaintiff was seen by Desiree Paschal, LPCC. (Tr. 668-670). Plaintiff reported depression, anxiety, feeling overwhelmed, having low energy, weight loss, hopelessness, and feelings of guilt. (Tr. 668).

On August 18, 2016, Plaintiff reported to Dr. Amin that she was burning herself, but denied suicidal ideation. (Tr. 618). On mental status examination she had a depressed and irritable mood, full affect, poor insight, and fair judgment. (Tr. 619-620).

On September 20, 2016, Plaintiff reported to the Emergency Room ("ER") using a cane, and reported being struck by a vehicle the previous evening. (Tr. 520). She was discharged the same date. (Tr. 525). Plaintiff had "some pain to palpation of the R hip," but could ambulate. *Id*. Plaintiff's neurological examination was completely benign, a head CT scan and pelvic x-ray were also unremarkable. *Id*. She was given a prescription for Tramadol and sent home. *Id*.

On September 22, 2016, Plaintiff reported panic attacks to Dr. Amin. (Tr. 615). On mental status examination, Plaintiff had a full affect, anxious mood, and fair insight and judgment. (Tr. 617).

On September 28, 2016, Plaintiff was seen for complaints of right hip, right lower extremity, right hand, and lower back pain. (Tr. 539-541). Claro Caluya, M.D., noted that she had an antalgic gait favoring the right lower extremity. (Tr. 540). Plaintiff was advised to use a heating pad, take hot showers, and to engage in a home exercise-stretching program. (Tr. 541) She was referred to a massotherapist, was to begin a course of passive physical therapy

three times a week, and prescribed Naproxen and Percocet. (Tr. 611).

On December 6, 2016, Plaintiff complained of 10 of 10 pain in her right hip and right leg. (Tr. 542). Chantal Dothey, M.D., noted Plaintiff could stand erect and walk with a normal gait. (Tr. 544). Dr. Dothey believed Plaintiff's long-term prognosis was favorable, "but because of the unpredictability of soft tissue injuries, an accurate assessment of future periods of symptoms and disabilities cannot be made." (Tr. 545).

On May 17, 2017, Plaintiff reported she was happy after receiving temporary disability back pay. (Tr. 665).

On June 1, 2017, Plaintiff was seen by Dr. Amin after not being seen since February. (Tr. 607). Plaintiff was drinking and using cocaine again after thirty years of sobriety. *Id*. Plaintiff had a depressed and anxious mood, as well as poor insight and judgment. (Tr. 609).

On July 6, 2017, Plaintiff reported using cocaine infrequently due to lack of money. (Tr. 604). She reported drinking alcohol daily. *Id*. On mental status examination, Plaintiff's mood was anxious, angry, and irritable; her insight and judgment were poor. (Tr. 606).

### 2.  Medical Opinions Concerning Plaintiff's Functional Limitations

On October 28, 2015, Plaintiff underwent a consultative psychological examination performed by Herschel Pickholtz, Ed.D., at the behest of the State Agency. (Tr. 438-446). She never thought of suicide or homicide, and was never hospitalized for psychiatric reasons. (Tr. 440). With respect to daily activities, Plaintiff reported taking care of her hygiene daily, mopping and sweeping the floors, doing laundry once a month, shopping for food once a month, cooking dinner twice a week, watching TV daily, and washing the dishes. (Tr. 443). She reads newspapers and magazines, and does a lot of writing. *Id*. Dr. Pickholtz opined that Plaintiff's IQ fell in the borderline range, and that her ability to understand, remember, and carry out

6

instructions for work comparable to the type of work she did in the past was slightly impaired; her capacity for attention and concentration fell in the borderline ranges, but would improve with future psychiatric treatment; her ability to relate to coworkers and others was somewhat impaired; and her ability to handle the stresses and pressures of work comparable to the work she did in the past was somewhat impaired. (Tr. 445). He noted that "[e]ven without her medications and treatment, [Plaintiff's] psychiatric problems did not seem to interfere greatly at work." *Id.*

On November 4, 2015, state agency psychologist Audrey Todd, Ph.D., opined Plaintiff was moderately limited in her ability to understand and remember detailed instructions, but "can handle simple, repetitive tasks as well as some complex tasks." (Tr. 91-92). In the area of sustained concentration and persistence, Dr. Todd opined Plaintiff was moderately limited in her ability to carry out detailed instructions and to maintain attention and concentration for extended periods, explaining that Plaintiff "would have difficulty maintaining attention and concentration for extended periods of time due to anxiety and depression." (Tr. 92). In the area of social interaction, Dr. Todd assessed moderate limitations in Plaintiff's ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors. (Tr. 92-93). She explained that Plaintiff "would have difficulty interacting appropriately with the general public and accepting instructions & responding appropriately to criticism from supervisors due to anxiety and depression." (Tr. 93). Finally, in the area of adaptation, Dr. Todd opined Plaintiff was moderately limited in her "ability to respond appropriately to changes in the work setting," explaining that Plaintiff "would have difficulty dealing with frequent changes in the workplace due to anxiety & depression." (Tr. 93).

On February 24, 2016, state agency physician Anne Prosperi, D.O., reviewed Plaintiff's medical records and completed a physical RFC assessment. (Tr. 152-154). She opined Plaintiff

7

could lift/carry 25 pounds frequently and 50 pounds occasionally, stand/walk for six hours, and sit for six hours in an eight-hour workday. (Tr. 153). She had no postural, manipulative, visual, communicative, or environmental limitations. *Id*. Dr. Prosperi explained that while Plaintiff underwent ankle surgery in July of 2015, Plaintiff had poor compliance with treatment because she waited sixteen weeks to start physical therapy. (Tr. 153). Dr. Prosperi noted the surgery wound was well-healed and that x-rays revealed Plaintiff's ankle was "fully healed, normal alignment, no hardware failure, minimal arthritis." *Id*. She noted Plaintiff's gait was mildly antalgic, that her gait normalized after just one physical therapy session, and that cane use was not expected long-term. *Id*.

On February 25, 2016, state agency psychologist Bruce Goldsmith, Ph.D., reviewed Plaintiff's medical records and completed a mental RFC assessment. (Tr. 154-156). Dr. Goldsmith opined Plaintiff was moderately limited in her ability to understand and remember detailed instructions, but "can handle simple, repetitive tasks (1-4) as well as some complex tasks." (Tr. 154). In the areas of sustained concentration and persistence, he assessed a number of moderate limitations, explaining that Plaintiff "would have difficulty maintaining attention and concentration for extended periods of time due to anxiety and depression. Clmt is able to complete 1-4 step task. Clmt is limited to simple tasks that are not fast paced or have unusual production demands." (Tr. 154-155). In the area of social interaction, Dr. Goldsmith opined Plaintiff "would have difficulty interacting appropriately with the general public and accepting instructions & responding appropriately to criticism from supervisors due to anxiety and depression. Clmt is limited to occasional and superficial interpersonal contact." (Tr. 155). Finally, in the area of adaptation, he assessed moderate limitations in Plaintiff's ability to respond appropriately to changes in the work setting, explaining that Plaintiff "would have

difficulty dealing with frequent changes in the workplace due to anxiety & depression." (Tr. 155-156).

On July 6, 2017, treating psychiatrist Dr. Amin completed a checklist-style mental impairment questionnaire "with patient." (Tr. 604, 672-677). She indicated she saw Plaintiff every one to two months since January of 2016. (Tr. 672). Dr. Amin indicated she had diagnosed Plaintiff with major depressive disorder, PTSD, generalized anxiety disorder, borderline personality disorder, moderate alcohol use, and moderate cocaine use. *Id*. Dr. Amin checked boxes indicating Plaintiff had "no useful ability to function" in the following areas: understanding, remembering, or carrying out detailed instructions; setting realistic goals or making plans independently of others; dealing with stress of semiskilled and skilled work; interacting appropriately with the general public; and using public transportation. (Tr. 675). Dr. Amin left blank the portions of the questionnaire asking her to explain the medical and clinical findings that support these limitations. (Tr. 675). Dr. Amin checked boxes indicating Plaintiff had extreme functional limitation in maintaining social functioning, and had four or more episodes of decompensation within the past twelve months, each of at least two weeks duration. (Tr. 676). She further opined Plaintiff had marked limitations in activities of daily living and in maintaining concentration, persistence, and pace. *Id*. She further believed Plaintiff would miss more than four days per month due to her impairments or treatment thereof. (Tr. 677). She indicated Plaintiff's substance abuse contributed to her limitations. *Id*.[3]

---

[3] Because Plaintiff's brief has not challenged the ALJ's credibility determination, the court foregoes any recitation of Plaintiff's hearing testimony. Although Plaintiff testified that she needed a cane to ambulate throughout the claimed period of disability (Tr. 65-69, 71), her testimony alone is insufficient under Social Security Ruling ("SSR") 96-9p, 1996 WL 374185 (Jul. 2, 1996) as discussed *infra*. *See, e.g., Mitchell v. Comm'r of Soc. Sec.*, No. 4:13cv1969, 2014 WL 3738270 (N.D. Ohio Jul. 29, 2014) (finding that Plaintiff's testimony did not qualify as

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work

---

"medical documentation establishing the need" for the cane under SSR 96-9p) (Pearson, J.); *Smith v. Astrue*, No. 2:11-0065, 2012 WL 4329007 at *8 (M.D. Tenn. July 16, 2012), *report and recommendation adopted*, 2012 WL 4328993 (M.D. Tenn. Sept. 20, 2012) ("Even if the ALJ had not discussed the use of the cane, Plaintiff failed to provide medical documentation of its requirement. The only evidence supporting a cane requirement comes from Plaintiff's testimony.")

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant's date last insured as a Medicare Qualified Government Employee is December 31, 2021. She also meets the insured status requirements of the Social Security Act for a period of disability and disability insurance benefits from October 1, 2016 through December 31, 2021.

2.  It was previously found that the claimant is the unmarried widow of the deceased insured worker and has attained the age of 50. The claimant met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.

3.  The prescribed period ends on July 31, 2020.

4.  The claimant has not engaged in substantial gainful activity since July 7, 2015, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

5.  The claimant has the following severe impairments: status post open reduction and internal fixation of the right ankle, depression, anxiety, post-traumatic stress disorder (PTSD), borderline personality disorder, moderate alcohol use disorder, and moderate cocaine use disorder (20 CFR 404.1520(c) and 416.920(c)).

6.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

7.  After careful consideration of the entire record, I find that the claimant has

the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant can occasionally climb stairs and ramps, occasionally climb ladders, ropes, or scaffolds, frequently balance, stoop, and kneel, and occasionally crouch and crawl. The claimant can perform simple tasks but not at a production rate pace. The claimant can tolerate occasional interactions with supervisors, co-workers and the public. The claimant can tolerate occasional routine workplace changes.

8. The claimant is capable of performing past relevant work as a dishwasher. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

9. The claimant has not been under a disability, as defined in the Social Security Act, from July 7, 2015, through the date of this decision (20 CFR 404.1520(1) and 416.920(f)).

(Tr. 18-29).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).

Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Assignments of Error**

### 1. Need For a Hand-Held Assistive Device

In the first assignment of error, Plaintiff asserts the evidence supports a finding that Plaintiff has consistently required the use of a cane since her alleged onset date, and that there exists no evidence to the contrary. (R. 10, PageID# 723). Despite arguing the ALJ erred by failing to include the need for a handheld assistive device in her brief, Plaintiff does not address Social Security Ruling ("SSR") 96-9p, 1996 WL 374185 (Jul. 2, 1996), which provides as follows:

> **Medically required hand-held assistive device**: *To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, **and** describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).* The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.
>
> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to

make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.

SSR 96-9p (emphasis added).

The ALJ's decision discussed Plaintiff's cane use in several different passages, indicating:

I find that listing 1.03 is unsatisfied because the record does not demonstrate an inability to ambulate effectively and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset. The claimant walked with an antalgic gait and used a cane at times (Ex. 7F/3, 5). However, progress notes at times indicated the claimant showed normal gait and station (Ex. 17F/30, 33, 39). In addition, the claimant has manage [sic] her personal care, took care of elderly parents, and performed household tasks, such as mopping and sweeping floors, shopping, and cooking (Ex. 7F /7).

\*\*\*

She alleged disability due to shattered right ankle, metal rods in the left arm, depression, and arthritis (Ex. 3E/2). The claimant subsequently noted that she experienced swollen legs, back and hip pain, could not get out of bed, stand, or walk without the use of a cane, and could not walk or stand for longer than 15 minutes without her back hurting (Ex. 8E/2, 11E/2).

\*\*\*

As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the objective evidence failed to substantiate the degree of limitations. The claimant sustained an injury to her right ankle on July 7, 2015 after slipping on porch steps (Ex. 3F/2, 15F/7). An x-ray of the ankle showed right ankle fracture (Ex. 3F/4, 12, 15F/9-10, 15-16). The claimant underwent surgery later in July 2015 with no complications (Ex. 5F/5, 7, 6F/5, 7). Subsequent x-rays showed normal alignment and no hardware failure (Ex. 6F/12, 9F/8, 15-18). The claimant continued to report pain ranging from 5/10-7/10 but progress notes indicated that she was progressing as expected (Ex. 9F/10, 12, 14, ). Her treatment plan included physical therapy and progressive weight bearing (Ex. 6F/ 13, 9F/9, 11). By December 2015, the claimant received a shorter cast and showed mildly antalgic gait with a limp on the right side (Ex. 9F/15).

The record included evidence of a physical therapy sessions that showed improvement after only a few sessions. The record indicated non-compliance with physical therapy and that the claimant reported she missed sessions due to

14

difficulty with transportation and caring for her elderly parents (Ex. l0F/2-3, l lF/2, 5). The claimant reported that she lived alone on the second floor of a two-family home and helped her mother take care of her elderly father (Ex. l0F/5). Progress notes from her last physical therapy session indicated that she ambulated with a normalized gait on level surfaces with a standard cane (Ex. l lF/4). After only three sessions over a two-month period, the claimant showed improved quality of gait, improved ability to climb steps, increased range of motion, increased strength, and decreased intensity and frequency of pain. The claimant discontinued physical therapy and reported that she would continue with her home exercise program (Ex. l lF/4, 15F/2).

\*\*\*

The claimant at times showed antalgic gait favoring the right extremity and used a cane (Ex. 12F/5, 14F/3, 6). Other progress notes indicated normal gait and station (Ex. l 7F/30, 33, 39).

\*\*\*

Although the claimant used a cane, she testified that it was prescribed in 2015 when she initially broke her ankle (Hearing Record, 7/21/2017). The claimant underwent surgery with no complications, subsequent diagnostic testing identified no issues, and progress notes indicated that the claimant was progressing as expected (Ex. 5F/5, 7, 6F/5, 7, 12, 9F/8, 10, 12, 14-18). The claimant was also not compliant with her physical therapy program and attended only three sessions (Ex. l0F/2-3, 11F/2, 5). Even after only three session[s], the claimant showed improved quality of gait, improved ability to climb steps, increased range of motion, increased strength, and decreased intensity and frequency of pain. Moreover, the claimant engaged in activities, such as babysitting, attending family social functions, caring for her elderly parents, art, writing, and reading novels (Hearing Record, 7/21/2017, Ex. l0F/5, 11F/2, l7F/6, 9, 36, 49, 56). Accordingly, I find that the record does not establish limitations that would preclude work activity within the residual functional capacity defined in this decision.

(Tr. 20, 23, 24-25).

The court finds no reversible error with respect to the ALJ's decision to omit the need for a hand-held assistive device from the RFC. SSR 96-9p essentially contains two requirements before an ALJ may conclude that a hand-held assistive device is "medically required." First, there must be medical documentation establishing the need for said device to aid in

walking/standing; and second, the medical documentation must also "describ[e] the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information.)" 1996 WL 374185 at *7. Numerous court decisions have considered a plaintiff's testimony regarding the use of assistive devices, but found it unavailing when the record lacked supporting medical documentation demonstrating the requirement for such a device. *See, e.g., Tripp v. Astrue*, 489 Fed. App'x 951, 955 (7th Cir. 2012) (finding the record supported the ALJ's finding that a cane or crutch was *not* a "medical necessity" where the record contained only the claimant's self-reports of cane use and physicians' observations that claimant used a cane); *Blackburn v. Colvin*, No. 1:15cv1398, 2016 WL 4821766 at *5 (N.D. Ohio Sept. 15, 2016) (noting that Plaintiff's use of crutches and a wheelchair to ambulate were not supported by medical documentation, as required by Social Security Ruling 96-9p) (Pearson, J.); *Robinson v. Comm'r of Soc. Sec.*, No. 5:14-cv-291, 2015 WL 1119751 at *15 (N.D. Ohio Mar. 11, 2015) (finding that a physician's mere observation that claimant used a cane was insufficient to establish the cane was a medical necessity because physician's "treatment notes do not reflect a prescription for a cane") (McHargh, M.J.).

Plaintiff's own hearing testimony does not qualify as medical documentation and is insufficient to establish that her cane usage was medically required, as stated in footnote three *supra*. While there are observations in the medical records that Plaintiff was using a cane, that too is insufficient. The two pieces of evidence that come closest to establishing the first requirement of SSR 96-9p are Dr. Mackel's treatment note less than five months after Plaintiff's ankle surgery that simply stated "**Plan: Other**. Cane for ambulation." (Tr. 483). The other is a physical therapist's note approximately seven months after surgery that Plaintiff's "script" for cane was ready. (Tr. 499). It is questionable whether physical therapy providing Plaintiff with a

cane would qualify as medical documentation that a cane was required for walking and standing, as social security regulations do not recognize physical therapists as acceptable medical sources. *See, e.g., Noto v. Comm'r of Soc. Sec.*, 632 Fed. App'x 243, 249 (6th Cir. 2015) (observing that a physical therapist is a "non-acceptable medical source"); *Nierzwick v. Comm'r of Soc. Sec.*, 7 F. App'x 358, 363 (6th Cir. 2001) ("a physical therapist is not recognized as an acceptable medical source").

In any event, neither Dr. Mackel nor the physical therapist's notes can be construed as establishing that a cane was prescribed for at least twelve months. The evidence cited by the parties is insufficient to demonstrate "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing." Rather, the record contains conflicting and unclear evidence. However, "where there is conflicting evidence concerning the need for a cane, 'it is the ALJ's task, and not the Court's, to resolve conflicts in the evidence.'" *Forester v. Comm'r of Soc. Sec.*, No. 2:16-CV-1156, 2017 WL 4769006, at *4 (S.D. Ohio Oct. 23, 2017) (*quoting Foreman v. Comm'r of Soc. Sec.*, No. 2:10-cv-1008, 2012 WL 1106257, at *4 (S.D. Ohio Mar. 31, 2012)).

Finally, even if the court assumes *arguendo* that the medical documentation is sufficient to establish the first part of the SSR 96-9p test, none of the medical documentation cited by Plaintiff or recounted in the treatment history *supra* "describe[es] the circumstances for which [a cane] is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." Plaintiff fails to draw this court's attention to any medical records documenting and describing the *circumstances for which a cane is needed* as

required by SSR 96-9p.[4] *See, e.g., Perry v. Berryhill*, No. 1:16CV2970, 2018 WL 1393275, at *4 (N.D. Ohio Mar. 20, 2018) ("Nor does Plaintiff cite to any medical records describing the circumstances for which a cane is needed as required by SSR 96–9p.") (Limbert, M.J.) (*citing Parrish v. Berryhill*, No. 1:16CV1880, 2017 WL 2728394 (N.D. Ohio June 8, 2017)).

Because Plaintiff has failed to demonstrate the medical documentation of record shows a hand-held assistive device is medically required under SSR 96-9p, her argument that the ALJ erred by omitting the need for a cane in the RFC is untenable. Thus, the court recommends finding that Plaintiff's first assignment of error is without merit.

### 2. Treating Source Rule

In the second assignment of error, Plaintiff asserts the ALJ erred by failing to give good reasons for rejecting the opinions of her treating psychiatrist, Dr. Amin. (R. 10, PageID# 724-725). The Commissioner disagrees, arguing the ALJ gave several good reasons for discounting the opinion of Dr. Amin. (R. 14, PageID# 749-750).

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions

---

[4] While the court has reviewed pertinent portions of the nearly 700 page transcript identified by the parties, it has not found any medical documentation that could reasonably be construed as describing the circumstances for which a cane is needed. Nevertheless, the onus remains on Plaintiff and not the court to identify evidence supporting her assignments of error. *See, e.g., Paul v. Comm'r of Soc. Sec.*, No. 2:13cv14911, 2015 WL 1299980 at *1 (E.D. Mich. Mar. 23, 2015) ("[P]laintiff cannot simply make bald claims that the ALJ erred, while leaving it to the Court to scour the record to support this claim."); *Nash v. Comm'r of Soc. Sec.*, No. 1:12 CV 2234, 2013 WL 4736736, at *3 (N.D. Ohio Sept. 3, 2013) ("it is not this Court's function to scour the administrative record and craft arguments on Plaintiff's behalf."); *Crocker v. Comm'r of Soc. Sec.*, No. 1:08cv1091, 2010 WL 882831 at *6 (W.D. Mich. Mar. 9, 2010) ("This court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments.")

are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir.

1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

The ALJ addressed Dr. Amin's opinion as follows:

> I also considered the opinion of the claimant's treating source, Jaina Amin, M.D., who completed a Mental Impairment Questionnaire on July 6, 2017 (Ex. 18F). Dr. Amin noted a treating relationship of every one to two months since approximately January 2016 (Ex. 18F/2). Dr. Amin provided a Global Assessment of Functioning (GAF) of 40, indicating major impairment in several areas (Ex. 18F/2). Dr. Amin described the claimant as experiencing ongoing depression, poor decision-making, chronic passive suicidal ideation, and self-harming behaviors and indicated a fair prognosis. Dr. Amin opined ranges of limitations from "seriously limited, but not precluded" to "no useful ability to function" in unskilled work (Ex. 18F/4). Dr. Amin opined "no useful ability to function" in semi-skilled and skilled work (Ex. 18F/5). Dr. Amin opined "no useful ability to function" in interacting appropriately with the general public and use public transportation, "unable to meet competitive standards" in maintaining socially appropriate behavior and travel in an unfamiliar place, and "unlimited or very good" ability to adhere to basic standards of neatness and cleanliness. In addition, Dr. Amin opined marked limitation in activities of daily living and maintaining concentration, persistence, or pace and extreme difficulties in maintaining social functioning (Ex. 18F/6). Further, the claimant would be unable to manage benefits in her own best interest due to high impulsivity and using drugs (Ex. 18F/7).

*** 

While Dr. Amin is a treating provider, I give little rather than controlling weight to this opinion. I note the treating relationship duration and that Dr. Amin is a treating source specializing in psychiatry (Ex. 18F/2). However, I find that the record does not support Dr. Amin's opinion regarding marked and extreme limitations and a GAF of 40. In particular, although alone the GAF is not considered as the basis for a disability determination, it is another factor examined in determining the claimant's functional capacity, yet the record does not demonstrate this degree of functioning. On examination, the claimant routinely presented as oriented, calm, cooperative, and showed normal and appropriate speech and eye contact, organized, linear, logical thought process, normal thought content, perception, and cognition, adequate fund of knowledge, and no deficits in recent and remote memory or attention and concentration (Ex. 3F/3, 5F/10, 8F/6, 9F/4, 13F/11, 14F/6, 15F/8, 17F/4-56). The claimant at times demonstrated poor insight and judgment but other times showed fair insight and judgment and expressed no thoughts of self-harm (Ex. 17F/4-5, 7-8, 12-13, 15, 22, 26, 30, 34, 39). In addition, the claimant has retained her ability to manage her own personal needs, take care of elderly parents, shop, read, write poetry, perform household tasks, socialize with family members, and attend family functions (Ex. 7F/7-8, l0F/5, 11F/2, 17F/11, 36, 49, 56). Thus, I give little weight to Dr. Amin's opinion.

(Tr. 26-27).

Plaintiff complains that in ascribing little weight to the opinion, "the ALJ gave no consideration to the source's length of the treatment relationship with Ms. Wright, nor the frequency of examination, nor the nature and extent of either relationship, nor supportability of the opinion, nor the specialization of the treating source." (R. 10, PageID# 725). The Commissioner contends that this assertion is directly refuted by the decision. (R. 14, PageID# 749). Unless a treating source's opinion is given controlling weight, an ALJ should consider the following factors in deciding the weight to give any medical opinion: the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source. 20 C.F.R. § 404.1527(c); *see generally Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

While the ALJ is directed to consider such factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in her decision. *See Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).

The court agrees with the Commissioner that the ALJ did not ignore the length of the treatment relationship, the frequency of examination, or the specialization of the source. Plaintiff's position to the contrary is untenable. First, the ALJ expressly mentioned that Dr. Amin is a treating source specializing in psychiatry (Tr. 27) and that she saw Plaintiff every one to two months since approximately January 2016. (Tr. 26). Merely because these factors alone did not tip the scale in favor of the ALJ ascribing controlling weight or great weight to Dr. Amin's opinion does not mean the ALJ gave no consideration to these factors—an argument contrary to the express language of the decision.

Plaintiff also argues the ALJ erred because "the ALJ made no finding that Dr. Amin treated her in connection to conditions other than those covered by her opinion." (R. 10, PageID# 724). As Plaintiff suggests, when a physician or psychiatrist opines on an area outside of his or her specialty or with respect to conditions that he or she did not treat, an ALJ has a sound basis for rejecting such an opinion. However, to the extent Plaintiff suggests an ALJ may not discredit a medical source opinion simply because it does not meander into assessing limitations stemming from conditions the source did not treat, Plaintiff cites no authority in support.

Plaintiff also avers that this is not a case where a treating doctor's opinion was contradicted by her own treatment notes. (R. 10, PageID# 724). However, that is exactly what the ALJ found when pointing to Dr. Amin's relatively unremarkable mental status examination results,

22

especially in comparison to the extreme limitations assessed in the July of 2017 opinion.[5] (Tr.

27). In addition, Plaintiff avers this is not a case where a treating doctor's opinion is inconsistent

with the claimant's reported activities. (R. 10, PageID# 724). The ALJ, however, specifically

cites Plaintiff's management of her own needs as well as caring for her elderly parents and other

activities, which the ALJ concluded are inconsistent with the extreme limitations assessed by Dr.

Amin. (Tr. 27).

Finally, Plaintiff's suggestion that the ALJ was cherry-picking from the record fails to

furnish a basis for remand. The Sixth Circuit has found that a claimant's allegation of cherry-

picking evidence by an ALJ unavailing on appeal, agreeing with the court below that such an

"allegation is seldom successful because crediting it would require a court to re-weigh record

evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. Apr. 3, 2014)

(*citing White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (finding "little indication

that the ALJ improperly cherry picked evidence; the same process can be described more

neutrally as weighing the evidence.")); *accord Hammett v. Comm'r of Soc. Sec.*, No. 16-12304,

2017 WL 4003438, at *3 (E.D. Mich. Sept. 12, 2017); *Cromer v. Berryhill*, No. CV 16-180-

DLB, 2017 WL 1706418, at *8 (E.D. Ky. May 2, 2017); *Anderson v. Berryhill*, No.

1:16CV01086, 2017 WL 1326437, at *13 (N.D. Ohio Mar. 2, 2017), *report and recommendation*

*adopted*, 2017 WL 1304485 (N.D. Ohio Apr. 3, 2017).

The court recommends finding that the ALJ gave sufficiently good reasons for ascribing

little weight to Dr. Amin's opinion, rendering Plaintiff's second assignment of error without

---

[5] Though not explicitly mentioned by the ALJ, Dr. Amin's July of 2017 opinion came only a
month after Plaintiff had not seen Dr. Amin for several months, during which time Plaintiff
began abusing cocaine and alcohol after thirty years of sobriety and reported drinking daily. (Tr.
604-609).

merit.

## IV. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be

AFFIRMED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: July 1, 2019

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**